CHARLES S. MERSICK, TRUSTEE, ET AL. *vs.* THE HARTFORD AND WEST HARTFORD HORSE RAILROAD COMPANY.

First Judicial District, Hartford, May Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In distributing the avails of a sale of the property of an insolvent railroad company, courts of equity have sometimes given a preference to the claims of supply-creditors and other unsecured creditors, over those of the mortgage bondholders. Such a preference rests upon the ground that the current income of the railroad, which by common consent is ordinarily and properly used to pay such debts, has been diverted to the benefit of the mortgagees or their security. Whatever may be said as to the soundness of this doctrine, it certainly has no application where—as in the present instance—there has been no diversion of income. Under such circumstances the mortgage bondholders are not to be deprived of their right to priority of payment.

The mortgage in question authorized the trustee for the bondholders, upon default in the payment of interest, to take possession of and operate the railroad, and provided that he should be reimbursed for his outlays, which were to " constitute a first lien upon the mortgaged property." *Held* that a payment made by the trustee upon taking possession, covering the wages of employees for the

three months previous, was a reasonable expense incurred in his trust and properly allowed as a preferred claim, since it appeared as a fact in the case that but for such payment it would have been impracticable for the trustee to have continued the operation of the railroad.

While in possession, the trustee operated a leased line in connection with the railroad in question. *Held* that the lessor's claim for rent during the trustee's possession, but for such period only, was properly allowed as a preferred claim.

Nearly a year before the trustee took possession, one *P* had advanced money to the railroad company at its request to pay its taxes. *Held* that *P* was not thereby subrogated to the rights of the State, nor did he acquire any claim upon the property which took precedence over that of the bondholders.

Argued May 7th—decided July 24th, 1903.

APPEAL from the judgment of the Superior Court of Hartford County (*Case,* J.), in receivership and fore-closure proceedings, establishing the order in which the claims of intervening creditors should be paid out of the proceeds of the foreclosure sale. *Error and cause remanded.*

The defendant company was organized under the laws of this State, with power to equip and operate by electricity a street railroad between certain points in Hartford and West Hartford. On the 1st of August, 1894, said company mort-gaged all its property and franchises to the plaintiff, State treasurer, as trustee, to secure the payment of its bonds of the par value of $315,000. On the 1st of August, 1897, the railroad company made default of payment of interest on said bonds, and no interest has since been paid thereon. On the 4th of February, 1899, the plaintiff trustee, at the request of certain of the bondholders, and in accordance with the terms of the mortgage, assumed the possession and man-agement of the road, and placed James T. Patterson, one of the bondholders, in control, as his, the plaintiff's, agent. On the 4th of March, 1899, the plaintiff trustee commenced an action for the foreclosure of the mortgage and the appoint-ment of a receiver, and on that day said Patterson was ap-pointed temporary receiver, and on the 9th of June, 1899, permanent receiver, of the property described in the mort-gage. On the 16th of June, 1899, the Superior Court

rendered judgment that unless the defendant company should, on or before the 5th of July, 1899, pay the receiver the sum of $345,628.53, with interest and costs, said property should be sold as an entirety, at public auction, on the 1st of August, 1899. On the 1st of August the receiver, in accordance with said judgment, sold said property for $20,000 in cash, to Samuel D. Coykendall, Henry C. Soop, and Edward S. Greeley, and the Superior Court, on the 6th of October, 1899, passed an order accepting and approving the receiver's report of the sale, and confirming the sale. After the purchase of said property the said Coykendall, Soop, and Greeley, organized " The Farmington Street Railway Company," and conveyed to it the property so purchased at the foreclosure sale, and said Farmington Street Railway Company, upon its application, showing that it had become the owner of all the bonds described in the complaint, was permitted to join, as a party plaintiff, in this action. The said James T. Patterson, and other claimants to the avails of said sale, were, upon their several applications, permitted to intervene as parties, and upon the facts hereinafter stated, found by the commissioners appointed by the court, the following claims were allowed, and, by the judgment ordering the distribution of said fund, directed to be paid in the following order :—

1. Of the State treasurer for taxes for the year 1898,     $ 1,038.87

2. Of railroad commissioners for salaries,     11.46

3. Claims for expenses of receivership, and of State treasurer while in possession of property,     980.00

4. Of W. J. Carroll, assignee, for labor performed within three months from appointment of receiver,     56.64

$2,086.97

5. Of certain named intervening supply-creditors, as a class, for supplies es-

|  |  |
|---|---|
| Amount brought forward | $2,086.97 |

sential to the operation of the road, furnished by them to the defendant company after January 1st, 1898, and prior to February 4th, 1899, amounting to .... $4,196.47

6. Of the plaintiff Mersick, trustee, .... 4,304.04 consisting of these items:

(a) $2,855.96 paid for wages of employees from November 12th, 1898, to February 4th, 1899.

(b) $1,448.08 paid for wages of employees and running expenses while trustee was in possession.

7. Of James T. Patterson, .... 16,303.55 consisting of these items:

(a) $3,956.52 advanced to pay taxes, April 12th, 1898.

(b) $11,031.65 advanced in April, 1898, to pay employees and other pressing claims against the company.

(c) $138.46 rent of Plainville line from February 4th to March 4th, 1899.

(d) $1,176.92, rent of Plainville line from June 18th, 1898, to February 4th, 1899.

|  |  |
|---|---|
| Total of claims ordered paid, | $26,891.03 |

That the first four claims above named, amounting to $2,086.97, are entitled to priority of payment over the bondholders, is not questioned.

As to the first item of the Mersick claim ($2,855.96), it is found that when he took possession of the railroad there had been a strike of the employees because their wages had not been paid, and that it was practically impossible for the trustee to resume the operation of the road without first paying these employees their wages then due, to said amount, for the period named in said item, and that at the request of

the trustee that amount was advanced by Patterson and paid to the employees entitled to the same.

The amount ($1,448.08) named in the second item of the Mersick claim was, at the request of the trustee, advanced by Patterson, and used for the purposes stated in that item.

As to the first item of the Patterson claim ($3,956.52), it is found he paid said sum to the State treasurer for taxes due April 15th, 1898, upon an understanding with the railroad company that he might hold the same as a preferred claim against the company, to the same extent that the State treasurer would have held it, had the amount not been paid.

As to the second item of the Patterson claim ($11,031.65), it appears that in April, 1898, Patterson advanced said sum to the railroad company to pay the employees of the company, and also certain pressing claims some of which had been put in suit, and upon others of which suits were threatened, under an arrangement with the company that he should receive assignments of the claims and of the wages to be paid by the money so advanced by him. Under said arrangement he received certain assignments of wages, dated from December 11th, 1897, to April 12th, 1898, amounting to $3,389.16; assignments of wages by pay rolls dated from September 3d to November 5th, 1898, amounting to $2,803.72; and assignments of accounts dated April 21st to May 19th, 1898, amounting to $473.53; or a total of $6,666.41.

Concerning the third item of said claim ($138.46), it is found that Patterson owned a line of street railway from Farmington to Plainville, built upon the right of way of the defendant company, under a contract by which the railroad company was to pay him $1,800 a year rent, and that said sum is for the rent due under said contract from February 4th to March 4th, 1899.

The fourth item ($1,176.92) is for rent due under said contract from June 18th, 1898, to February 4th, 1899.

It is stated in the judgment-file that the value of the property sold by order of court, as above stated, was, at the time of such sale, in excess of $150,000. It appears that

there was no evidence or admission of parties that said property was worth more than $20,000, excepting that the petition of one of the intervening parties, containing such an allegation, was demurred to by the Farmington Street Railway Company, and said demurrer was sustained.

From the judgment directing the distribution and payment of the proceeds of the sale of the mortgaged property, the Farmington Street Railway Company appeals, upon the grounds, in substance, that the trial court erred in giving preference to said claims of the intervening supply-creditors, and to said claims of Mersick and Patterson, over the claims of said Farmington Street Railway Company, as the owner of all the bonds secured by the mortgage, and that the court also erred in basing its judgment, in any part, upon the fact stated in the judgment, that the value of the mortgaged property, at the time of the sale, was in excess of $150,000.

The plaintiff Mersick, trustee, appeals upon the grounds that his claim should have been directed to be paid in the same order of preference as the charge of $980 for expenses of the receiver and the trustee, and if not ordered to be so paid, it should have been directed to be paid in the same order of preference as said class of supply-claims.

James T. Patterson appeals upon the grounds that his claims for $3,956.52 for money advanced to pay taxes, should have been given the same rank in order of payment as the State taxes named in the judgment, and that the remainder of his claim should have been directed to be paid in full after payment of the expenses of the receivership, and the State taxes, and the preferred claims for labor, and that if not ordered to be so paid, it should have been directed to be paid in the same order of preference as said class of supply-claims.

*Edward D. Robbins*, for the Farmington Street Railway Co.

*Howard H. Knapp*, for Charles S. Mersick, trustee, and James T. Patterson.

*Henry G. Newton*, with whom was *Harrison Hewitt*, for the Atlantic Refining Co. *et al.*

*Joseph P. Tuttle*, for John S. Parsons & Co. *et al.*

HALL, J. The mortgage to the plaintiff trustee was executed and recorded in accordance with the laws of this State permitting a street railway company to so mortgage all its property, including its franchise, to secure the payment of its bonds, and providing for the foreclosure of such mortgage in the same manner as ordinary mortgages of real estate. General Statutes, § 3848; *Whittlesey* v. *Hartford, P. & F. R. Co.*, 23 Conn. 421, 435.

The funds in the hands of the receiver represent the *corpus* of the property thus mortgaged. They are the proceeds of a sale of the mortgaged property, under a judgment in an action instituted by the trustee of the bondholders, as their authorized representative, after he had taken possession of the railroad in accordance with the provisions of the mortgage. In this action he asked for the appointment of a receiver and for a foreclosure by sale.

By the judgment of the Superior Court distributing these funds, the mortgagees of the railroad company receive no part of the proceeds of such foreclosure sale, made by the receiver by order of court and approved and confirmed by the court; but the entire avails of the sale, after the payment of the expenses of the receiver and trustee, and certain unquestioned claims, are applied to the payment of the unsecured claims of the intervening supply-creditors, and of Mersick and Patterson, before described, all of which were contracted since the execution of the mortgage and before possession was taken for the bondholders.

It is the claim of the Farmington Street Railway Company, one of the appellants—which was made a coplaintiff in the foreclosure suit since the commencement of that action, and is now the owner of all the bonds secured by the mortgage—that neither the said supply-creditors, nor Mersick or Patterson, are entitled to payment of their claims from

the proceeds of the sale of the mortgaged property, until after payment of the mortgage debt; while said intervening supply-creditors, and Mersick and Patterson, insist that their claims should take precedence, in order of payment, over the claims of the bondholders.

As supporting this claim of the supply-creditors, and of Mersick and Patterson, and as sustaining the judgment of distribution in so far as it gives priority to the supply-claims, and to certain items of the claims of Mersick and of Patterson, the leading case of *Fosdick* v. *Schall*, 99 U. S. 235, and numerous other cases which are said to follow the rule laid down in that case, are cited.

Assuming that the doctrine of *Fosdick* v. *Schall*, regarding the respective rights of the mortgagees and of the unsecured creditors of a railroad company as to priority of payment from the mortgaged property, or from the proceeds of its sale, at the time the trustee for the bondholders, or a receiver, takes possession of the railroad, is the law of this State, it becomes important to ascertain, first, just what was decided in that case, and second, whether the rule as there laid down is applicable to the facts of the present case.

*Fosdick* v. *Schall* was decided in 1878. In the opinion by Chief Justice Waite (p. 252) it is said: " The income out of which the mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements. Every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income. If for the convenience of the moment something is taken from what may not improperly be called the current debt fund, and put into that which belongs to the mortgage creditors, it certainly is not inequitable for the court, when asked by mortgagees to take possession of the future income and hold it for their benefit, to require as a condition of such an order that what is due from the earnings to the current debt shall be paid by the court from the

future current receipts before anything derived from that source goes to the mortgagees. . . . This, not because the creditors to whom such debts are due have in law a lien upon the mortgaged property or the income, but because, in a sense, the officers of the company are trustees of the earnings for the benefit of the different classes of creditors and the stockholders ; and if they give to one class of creditors that which properly belongs to another, the court may, upon an adjustment of the accounts, so use the income which comes into its own hands as, if practicable, to restore the parties to their original equitable rights. While, ordinarily, this power is confined to the appropriation of the income of the receivership and the proceeds of moneyed assets that have been taken from the company, cases may arise where equity will require the use of the proceeds of the sale of the mortgaged property in the same way. Thus it often happens that, in the course of the administration of the cause, the court is called upon to take income which would otherwise be applied to the payment of old debts for current expenses, and use it to make permanent improvements on the fixed property, or to buy additional equipment. In this way the value of the mortgaged property is not unfrequently materially increased. . . . Under such circumstances, it is easy to see that there may sometimes be a propriety in paying back to the income from the proceeds of the sale what is thus again diverted from the current debt fund in order to increase the value of the property sold. The same may sometimes be true in respect to expenditures before the receivership. . . . Whatever is done, therefore, must be with a view to a restoration by the mortgage creditors of that which they have thus inequitably obtained. It follows that if there has been in reality no diversion, there can be no restoration ; and that the amount of restoration should be made to depend upon the amount of the diversion."

In *Burnham* v. *Bowen*, 111 U. S. 776, decided in 1884, it was held that a debt for current expenses and payable from current earnings, the mortgage interest being then in arrear,

was a charge in equity on the continuing income "as well that which came into the hands of the court after the receiver was appointed as that before," and that a diversion of the current income for the improvement of the mortgaged property, by the trustee in possession or by the receiver, created in equity a charge on the property for its restoration in favor of the current-debt creditor. The opinion concludes with the statement that it was only intended to decide what was decided in *Fosdick* v. *Schall*, "that if current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund which has been thus improperly applied to their use."

In *St. Louis, etc., R. Co.* v. *Cleveland, etc., Ry. Co.*, 125 U. S. 658, 673, decided in 1888, the court, speaking by Justice Matthews, said : " But here there is no question in respect to current income. The fund in court is the proceeds of the sale of the property, and represents its *corpus;* and it cannot be claimed that ordinarily the unsecured debts of an insolvent railroad company can take precedence in the distribution of the proceeds of a sale of the property itself over those creditors who are secured by prior and express liens." After stating that there are cases where, owing to special circumstances, unsecured creditors may be entitled to priority of payment, even from the proceeds of a sale of the *corpus* of the property, citing *Fosdick* v. *Schall, Burnham* v. *Bowen*, and other decisions of the Supreme Court, the court says: "The rule governing in all these cases was stated by Chief Justice Waite in *Burnham* v. *Bowen* as follows·" (quoting the concluding words of the opinion in that case, as above stated), and adding: "There has been no departure from this rule in any of the cases cited; it has been adhered to and reaffirmed in them all."

In *Kneeland* v. *American Loan & Trust Co.*, 136 U. S. 89, ·97, decided in 1890, it is said: " The appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. : . . One holding a mortgage debt upon a railroad has the same,

right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. . . . No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception and not the rule that such priority of liens can be displaced."

In *Virginia & Alabama Coal Co.* v. *Central Railroad & Banking Co.*, 170 U. S. 355, 365, 368, decided in 1898, it was said that where the claim for supplies furnished to continue a railroad as a going concern was, as between the party furnishing them and the holders of bonds secured by a mortgage, a charge in equity on the continuing income, it was immaterial, " in determining the right to be compensated out of the surplus earnings of the receivership, whether or not during the operation of the railroad by the company there had been a diversion of income for the benefit of the mortgage bondholders; " and further, that " the dominant feature of the doctrine, as applied in *Burnham* v. *Bowen*, is that where expenditures have been made which were essentially necessary to enable the road to be operated as a continuing business, and it was the expectation of the creditors that the indebtedness created would be paid out of the current earnings of the company, a superior equity arises in favor of the material man as against the mortgage bonds in the income arising both before and after the appointment of a receiver from the operation of the property."

The cases above cited, and others upon the same subject, are reviewed in the recent cases of *Lackawanna Iron & Coal Co.* v. *Farmers' Loan & Trust Co.*, 176 U. S. 298, 313, and *Southern Ry. Co.* v. *Carnegie Steel Co.*, ibid. 257, 285, decided in 1900, in the latter of which the court, in the opinion by Justice Harlan, says: " It may be safely affirmed, upon the authority of former decisions, that a railroad mortgagee when accepting his security impliedly agrees that the current debts of a railroad company contracted in the ordinary course

of its business shall be paid out of current receipts before he has any claim upon such income ; . . . and that when current earnings are used for the benefit of the mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of any funds thus improperly diverted from their primary use."

Debts contracted not in the ordinary course of the operation of a railroad, but for the purposes of construction, are not entitled to priority of payment over the mortgage debt, under the rule in *Fosdick* v. *Schall*, 99 U. S. 235; *Wood* v. *Guarantee T. & S. Deposit Co.*, 128 id. 416; *Lackawanna Iron & Coal Co.* v. *Farmers' Loan & Trust Co.*, 176 id. 298.

From the language quoted from the cases above cited, it would appear that the foundation principle of the rule of *Fosdick* v. *Schall*, and the other cases referred to, by which a certain preference is given a particular class of unsecured creditors over the mortgagees of a railroad, is an agreement upon the part of such mortgagees, in accepting such security for the payment of the bonds, that current debts contracted in the ordinary course of the business of the railroad company shall be paid from the current earnings of the railroad before such mortgagees shall have any claim upon such income. It is by virtue of this implied agreement that the current debts, as between the supply-creditors and the mortgagees, become a charge in equity upon the continuing income, both before and after the appointment of a receiver, and whether or not there has been a previous diversion of the income for the benefit of the mortgagee.

But the superior equity springing from such implied agreement, in favor of the current-debt creditors, is in the current income derived from the mortgaged property, and not in the body of the mortgaged property itself. None of the cases above referred to go so far as to imply an agreement upon the part of the mortgagees, in accepting their security, that the body of the mortgaged property may be used to pay the current expenses of operating the railroad. The power of a court of equity to apply the *corpus* of mortgaged property to the payment of such unsecured claims

against the railroad company, is always made to rest upon the fact that in some manner the mortgagees have received the benefit of those earnings, which, by their implied agreement, should have been applied to the payment of current expenses.

We are not prepared to accept as law the rule which seems to have been adopted in some of the cases cited by counsel, that those who have rendered services or furnished supplies to keep a railroad in operation, even after the mortgage interest is in arrear and the bondholders have the right to take possession under their mortgage, are entitled to priority of payment over the mortgagees, from the *corpus* of the mortgaged property, or the proceeds of the sale thereof, when there has been no diversion of the earnings of the railroad to the benefit of the bondholders.

Assuming, without deciding, that the doctrine of *Fosdick v. Schall* is applicable to a street railroad like that of the defendants, how does it affect the rights of these intervening creditors? They are not asking that income in the hands of the receiver be used to pay their claims. There are no earnings of the railroad in his hands. The expense of operating the road during the receivership has exceeded the receipts. To entitle the intervenors to payment from the proceeds of the sale of the mortgaged property, it must therefore be shown that there has in some manner been a diversion of the current income for the benefit of the mortgagees.

But it does not appear that the mortgagees have received any part of the income of the road which should have been devoted to the payment of these claims, or that the action of the bondholders in taking possession of the road has prevented the payment of these claims from the earnings of the railroad. On the contrary, it appears that no interest has been paid on the bonds from the earnings of the railroad since August 1st, 1896, and that since that time the receipts from the road have been inadequate for the payment of the ordinary operating expenses, and that large sums have been borrowed by the company to enable it to meet its current

obligations.  There has been no diversion and there can be no restoration.  The claims of the supply-creditors, and the principal part of the Patterson claim, are not debts of the bondholders, but of the railroad company, contracted either upon the credit of the company itself or upon the credit of its earnings.  As there has been no diversion of such earnings for the benefit of the bondholders, there can be no payment of such claims, under the doctrine of *Fosdick* v. *Schall*, from the mortgaged property or the money derived from its sale, until the mortgage debt is satisfied.

The claims described in the above statement of facts are entitled to priority of payment from the proceeds of the sale, over the bonds, only as below stated.

The first four claims named, amounting to $2,086.97, are, as we understand, conceded to be privileged.  As the last of these four unquestioned claims is the only one allowed by the trial court as a preferred labor claim, under General Statutes, § 1051, it is unnecessary to decide whether, under that statute, such a labor claim would be entitled to priority of payment from the proceeds of the sale of the mortgaged property, over the mortgage debt.

For the reason already stated—that there has been no diversion of income—none of the claims of said class of supply-creditors, amounting to $4,196.47, are entitled to preference over the mortgage bonds.

The entire claim of Mersick, trustee, amounting to $4,304.04, is entitled to priority over the bonds, and should be paid as expenses properly incurred by the trustee while in possession of the mortgaged property for the benefit of the bondholders, and should stand in the same rank as to preference as the item of $980, expenses of receiver and trustee.

It appears from the record that the second item of said claim of Mersick ($1,448.08) was money paid by the trustee for wages of employees while the trustee was in possession, at the request of the bondholders, and under the mortgage which expressly empowered him to " operate and conduct the business of said railroad company."  No question is made as to the reasonableness of the amount so paid.

The first item of Mersick's claim ($2,855.96) was money paid employees for wages covering a period of about three months before the trustee took possession.

It is said that these claims of Mersick are made for the benefit of Patterson. The finding is that both these sums were advanced by Patterson at the request of Mersick. We must therefore treat them as money paid out by Mersick.

The mortgage deed under which Mersick as trustee took possession expressly provides that "the trustee shall be entitled to be reimbursed for all outlays of whatever sort or nature to be incurred in this trust," and that his "compensation and disbursements shall constitute a first lien upon the mortgaged property." That this outlay for wages due employees before the trustee took possession was a reasonable outlay and incurred in the trust, we must regard as determined by the finding that "it was practically impossible to resume the operation of said railroad" without first paying said "striking employees the wages then due them."

Of the claim of James T. Patterson, only the third item ($138.46) for rent of the Plainville line during the period the trustee was in possession, is entitled to priority of payment over the mortgage debt. That was a debt properly incurred by the trustee. As we read the finding, the trustee, while in possession through his agent Patterson, operated the Plainville line in connection with and for the benefit of the mortgaged property, and under a contract to pay the above sum as rent. Upon the facts this item of $138.46 must be regarded as an expense properly incurred by the trustee while in possession for the bondholders, and should rank in order of payment with the other expenses of the trustee and receiver.

The first item of the Patterson claim, $3,956.52, money advanced April 14th, 1898, to the railroad company to pay taxes, is not a preferred claim over the mortgage bonds. Patterson was under no obligation to pay these taxes, and it does not appear that he was either requested or authorized to do so by the bondholders. It was the duty of the railroad company to pay the taxes, and Patterson, at the request of

the company, paid its debt. The railroad company could not, by their agreement with Patterson, give him a lien or claim upon the body of the mortgaged property which would take precedence over that of the bondholders. The transaction was a loan by Patterson to the company, and he did not thereby acquire such lien upon the mortgaged property as the State may have had. *Sperry* v. *Butler*, 75 Conn. 369, 372.

For the reasons already given, neither the second item of the Patterson claim ($11,031.65), money advanced by him to the company in April, 1898, to pay wages of employees and other pressing claims against the company, nor the fourth item of said claim ($1,176.92), for rent of Plainville line prior to the time the trustee took possession, are privileged claims over those of the bondholders.

After payment to the receiver of the sums which may be allowed for his services and expenses, and to the plaintiff trustee of the costs and proper expenses of this appeal, and of the claims as above directed, the remainder of the fund should be paid to said Farmington Street Railway Company.

Apparently the finding in the judgment-file, that the value of the mortgaged property at the time of the sale exceeded $150,000, is not sustained by the record, from which it appears that no evidence was offered upon that subject, and that the demurrer to the pleading containing such an allegation was sustained.

There is error in the judgment distributing the proceeds of the sale of the mortgaged property, and said judgment is set aside, and the case remanded for the entry of a judgment distributing said funds in accordance with the law as above stated.

In this opinion the other judges concurred.