## ALBERT H. FLINT *vs.* THE DANBURY AND BETHEL STREET RAILWAY COMPANY.

Third Judicial District, Bridgeport, April Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, Js.

It is a well established principle that railway mortgagees, in accepting their security, impliedly agree that they shall have no claim upon the current income of the company until its current debts, contracted in the ordinary course of business, have been paid. Accordingly, courts of equity have developed a rule in railroad and street railway receiverships, that if the current earnings of the road for a period of six months prior to the receivership were paid to the mortgagees at the expense of current creditors whose claims arose during the same period, then such claims are entitled to preference and the corpus of the mortgage security is chargeable, if necessary, with the restoration of the income thus improperly diverted from its primary use; and it is deemed conclusive proof of a diversion if it appears that the mortgagees have received any of the current earnings of the road within six months of the receivership while creditors, whose claims are based upon ordinary operating expenses during the same period, have not been paid.

This rule applies, whether the receivership proceedings were instituted by the mortgagees, or by stockholders, or, as in the present case, by a creditor.

In determining the income which should have been paid to current creditors, items in the nature of fixed charges for depreciation, maintenance and upkeep are not properly deductible from the gross earnings, since they do not constitute debts actually incurred in the ordinary operation of the road. Therefore, there was no merit to the contention of the mortgagees in the present case that they were entitled to the interest payments made to them within six months of the receivership on the theory that such payments were substantially equivalent to the proper provision for maintenance which the defendant had failed to make.

Questions might arise as to whether actual expenditures for maintenance were or were not current operating expenses.

Section 3717 of the General Statutes, which authorized the New York, New Haven and Hartford Railroad Company to charge to the defendant a certain proportion of the cost of constructing a bridge, did not expressly or by inference secure the railroad company by a lien displacing existing recorded mortgages.

Argued April 11th—decided June 2d, 1924.

CLAIMS of alleged preferred creditors in receivership proceedings, brought to the Superior Court in Fairfield County and referred to a State Referee who, having heard the parties, filed his original and several supplementary reports; the court, *Brown J.*, accepted the reports and found the facts therein stated to be true, and adjudged that certain claims be disallowed as preferred, that others be in part allowed and paid as preferred, stating the order of their preference, and from this judgment mortgage bondholders and their trustee, and the Connecticut Company, appealed. *Error in part and cause remanded.*

This suit was begun by a creditor, and a receiver was appointed October 30th, 1917; there were then outstanding lawful interest-bearing bonds, secured by a duly recorded mortgage on the property of the defendant, for about $627,000. These bonds were issued in part on May 1st, 1906, in part on May 1st, 1913, and the supplemental mortgages to secure the above were issued December 27th, 1913, and November 14th, 1914, and all antedated any claims against the defendant company which the claimants sought to have made a charge against the corpus of the mortgaged property in preference to the mortgage liens.

The mortgagees were not made parties to the action originally, but on July 13th, 1921, were summoned in as new parties, but they made no application for affirmative relief.

The defendant company was organized under the laws of this State, with power to operate a street railway company in and between Danbury and Bethel. The defendant owned and operated, for about four years before the appointment of the receiver, a line of street railway extending from Long Hill to the lines of the Connecticut Company on Main Street, Bridgeport, with which lines it was connected. This line

formerly belonged to the Bridgeport and Danbury Electric Railway Company, and is not connected with the tracks or power wires of the lines in Danbury or Bethel; the distance between these lines is fifteen or more miles. The defendant had for the Long Hill line no power stations, car shops, or repair shops. For several years prior to the receivership, the Connecticut Company, under a series of contracts with the defendant, of which four were in effect on October 30th, 1917, furnished labor, materials and power for the operation of that line, and housed, cleaned, inspected and repaired its cars, and furnished certain trackage rights in Bridgeport. The receiver did not disaffirm the pending contracts but continued to operate the line under them until January 1st, 1919, when the Long Hill line was totally discontinued under order of court. The furnishing of power and rendition of services under these contracts were indispensable to the operation of this Long Hill line. For a year prior to the receivership and until the line was suspended on January 1st, 1919, the Long Hill line was operated at a loss. The contracts with the Connecticut Company for power and trackage contained this clause: "This agreement may also be terminated at the option of the Connecticut Company if said payments for power [or trackage] are not made by the purchaser within thirty days of the receipt of the same."

In the motion of the Connecticut Company filed on January 15th, 1918, for payment of its claims under its contracts as to the Long Hill line, it stated that the claims "are based upon power, services and supplies furnished . . . which were essential to the operation of said company's railroad, and that the payment of said claims as preferred claims is essential to the continuance of the operation of said railroad." This statement was repeated in a letter. The Connecticut Com-

pany claimed that its claims for twelve months before the receivership should be held preferred and a charge on the corpus. The receiver did not pay this claim, and the Connecticut Company continued its services. The defendant company diverted from its net earnings during the six months preceding the receivership, to pay interest to bondholders, $4,352.83.

As to the claim of the New York, New Haven and Hartford Railroad Company: In October, 1912, the Public Utilities Commission, upon the petition of the City of Danbury, issued, after due notice and hearing, the following order: "It is therefore ordered and decreed that the New York, New Haven and Hartford Railroad Company construct a bridge carrying White Street, (a highway in the City of Danbury) over the tracks of its railroad. . . . It is further ordered and decreed that the New York, New Haven & Hartford Railroad Company pay eleven twenty-fourths (11/24), the City of Danbury eight twenty-fourths (8/24), and the Danbury & Bethel Street Railway Company five twenty-fourths (5/24) of the cost of said bridge." The building of this bridge was delayed and on December 23d, 1914, the Commission issued the following order: "We do therefore order and direct said The New York, New Haven and Hartford Railroad Company . . . to complete the work . . . ordered on or before November 1st, 1915. We further order and direct the City of Danbury and The Danbury and Bethel Street Railway Company to pay monthly to The New York, New Haven and Hartford Railroad Company their respective proportionate shares of the actual monthly expenditures of said The New York, New Haven and Hartford Railroad Company pursuant to said order, after presentation to them of duly certified statements of such expenditures."

The time for the completion of the bridge was

later extended to January 1st, 1916, by the Commission.

The cost of said new bridge, including land damages and grade damages, was $28,902.70, of which the proportionate shares of the City of Danbury, The Danbury and Bethel Street Railway Company, and the Railroad Company, as determined and ordered by the Public Utilities Commission, were, respectively, $9,634.25, $6,021.39, and $13,247.06.

The Railroad Company presented to the defendant certified statements of the amounts of defendant's proportionate share of the expenditures during the progress of the work.

The defendant paid the New York, New Haven and Hartford Railroad Company on June 11th, 1915, the sum of $469.45, on July 21st, 1915, the sum of $48.48, and on July 21st, 1916, the sum of $484.90. No other payments have been made by the Street Railway Company to the Railroad Company on said account.

The Railroad Company claims that the balance due it on this account, $5,018.56, should be allowed as a charge, if necessary, against the corpus of the defendant's property, taking precedence of the mortgage liens.

The report of the State Referee, supplemented by additions thereto by the court of admitted and undisputed facts, discloses`that during the six months preceding the receivership the following persons furnished current supplies or services to the defendant necessary for the operation of the road and the continuance of its business. John McCarthy, coal, $4,194.74; Ferris Coal Co., coal, $86; John C. Serre, coal, $126; Harry McLachlan, coal, $79.55; Bridgeport Boiler Co., $1,224.48.

In its decree the court made the following rulings: "And it is further adjudged that the claim of the New York, New Haven & Hartford Railroad Company to

the amount of $5,018.56, the claim of the Connecticut Company to the amount of $4,917.71, the claim of John McCarthy to the amount of $4,194.74, the claim of the Ferris Coal Company to the amount of $86, the claim of John C. Serre to the amount of $126, the claim of Harry McLachlan to the amount of $79.55, and the claim of Bridgeport Boiler Company to the amount of $1,224.48, be and the same are hereby allowed as preferred claims in the amounts respectively stated, and that all of said claims shall be paid when most feasible under the receivership from the net receipts of operation by the receiver in full, if said net receipts are sufficient, or pro rata to such total aggregate amount as said net receipts are sufficient to pay.

"And it is further adjudged that if said net receipts of operation by the receiver are not sufficient to pay said claims in the amounts respectively stated, the claim of the New York, New Haven and Hartford Railroad Company, or so much thereof as shall not be paid from said net receipts of operation by the receiver shall be established as a charge against the corpus of the estate in the hands of the receiver, having preference over the liens securing both the Consolidated Mortgage Bonds and the First Refunding Mortgage Bonds.

"And it is further adjudged that if the net receipts of operation by the receiver are not sufficient to pay said claims in the amounts respectively stated, that the claims of the Connecticut Company, John McCarthy, Ferris Coal Co., John C. Serre, Harry McLachlan and Bridgeport Boiler Co., or such aggregate amount thereof as shall not be paid from said net receipts of operation by the receiver, shall be established to the total amount of $4,352.83 only, as a charge against the corpus of the estate in the hands of the receiver, having preference over the liens securing both the Consolidated Mortgage Bonds and the First Refunding Mortgage

Bonds, and that in that event said claims, or the unpaid portions thereof, shall share in sum of $4,352.83 pro rata in such respective proportions as the unpaid amount of each such claim shall bear to the total aggregate unpaid amount of all of said claims."

On their appeal the mortgagees claim, among other things, that there was no basis for any charge upon the corpus of the estate. The Connecticut Company claims that its charges for power services and trackage for one year prior to the receivership should have been allowed, as a lien upon the corpus of the mortgaged property.

*Frederick H. Wiggin,* with whom was *Ralph H. Clark,* for the appellants (mortgage bondholders).

*George D. Watrous,* for the appellant (The Connecticut Company).

*Norman S. Buckingham,* for the appellee (The New York, New Haven and Hartford Railroad Company).

CURTIS, J. The receivership in this action is that over a street railway company, and is still in operation, and the appeal relates to claims arising before the appointment of a receiver and presents questions relating to allowed or disallowed preferences of such claims over the recorded liens of mortgagees. In *Mersick* v. *Hartford & W. H. Horse R. Co.,* 76 Conn. 11, 55 Atl. 664, decided in 1903, we reviewed the law relating to this subject in railroad receivership cases as decided by the United States Supreme Court before that date, assuming but not deciding that they were applicable to a street railway. We held as established law in railroad receiverships, the following propositions deduced from the cases reviewed: *First:* A railroad

mortgagee when accepting his security, impliedly agrees that the current debts of the company contracted in the ordinary course of its business shall be paid out of current receipts before he has any claim on such income; and that when current earnings are used for the benefit of the mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of any funds thus improperly diverted from their primary use. *Second:* Where there has been no diversion of the current income for the benefit of the bondholders there can be no restoration by a charge on the corpus.

In the later case of *Gregg* v. *Metropolitan Trust Co.* (1905), 197 U. S. 183, 25 Sup. Ct. 415, the court held that where there was no diversion of income whereby the mortgagees had profited, the general rule was that a claim for supplies furnished within six months before the appointment of a receiver was not entitled to precedence over a mortgage lien recorded before the contract for supplies was made, and that where an order appointing a receiver authorized him to pay debts for labor or supplies created within the six months prior to the receivership *out of income*, this was based on a special theory which has been developed with regard to income.

In the instant case there was no order made on the appointment of the receiver to pay any claims and none were paid by him, and therefore no question arises as to the propriety or lawfulness of such an order or payment. As appears in the statement of facts, the trial court decreed that certain claims were liens upon the corpus of the mortgaged property taking precedence of the recorded liens of the mortgagees. The mortgagees contest the lawfulness of such decree, both in general and in particular; they claim that the equitable doctrines relating to railroad receiverships developed in

the United States courts are not applicable to street-railway companies. That such doctrines are applicable to street railways we think, upon principle and authority, is the sound rule and courts have so held. 23 R. C. L. p. 110, § 120, p. 112, § 121; *Cambria Iron Co.* v. *Union Trust Co.*, 154 Ind. 291, 55 N. E. 745, 48 L. R. A. 41.

The mortgagees further claim that these doctrines are only applicable in railway receiverships when the mortgagees seek the appointment of a receiver, in foreclosure proceedings, or when made parties to a suit by a cross-complaint. The principle underlying these equitable rules in railway receiverships as stated in *Mersick* v. *Hartford & W. H. Horse R. Co.*, 76 Conn. 11, 55 Atl. 664, is that a railway mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income, and that current income charged with such payment of current debts if diverted for the benefit of mortgagees must equitably be restored to pay current debts even from the corpus of the mortgaged property if necessary. This principle is obviously independent of whether the receivership suit is instituted by the mortgagees, or, as in the instant case, by a creditor or stockholder. *Moore* v. *Donahoo*, 133 C. C. A. 171, 217 Fed. 177. This claim is therefore overruled.

The trial court, upon a finding that from the current earnings of the defendant for the six months preceding the receivership, the mortgagees had received a payment of interest to the amount of $4,352.83, while current supply and labor expenses for that period in excess of that sum remained unpaid, ruled that this was an improper diversion and entitled such creditors to a restoration of that amount from the corpus of the estate for application to their claims. The mortgagees

claim that this was not a diversion, because the court finds that it arrived at its conclusion of diversion without deducting from the gross earnings, for the six months, items for depreciation, maintenance and upkeep of the railway plant. In other words, the mortgagees claim that the current earnings of the defendant were not a fund to be applied to meet the current expenses until all depreciation of the road from failure to properly provide for its maintenance and upkeep was proved to have been provided for, and that the payment of interest on bonds, where such provision for maintenance has not been made, was in substance a provision for maintenance to which the bondholders were entitled. No case has been cited that upholds this claim, and we are satisfied that it is without merit. In effect it dedicates the current earnings to the mortgagees, in preference to the current supply creditors, to the extent of depreciation, which is contrary to the fundamental principle. The cases indicate that this equitable doctrine in regard to the application of current receipts to current debts relates to debts made in the ordinary course of business in the six months before the appointment of a receiver. *North American Co. v. St. Louis & S. F. R. Co.*, 288 Fed. Rep. 612, 632. Questions might arise as to whether payments for maintenance made in that period were not diversions, but where the mortgagors have made payments of interest to the mortgagees from current earnings for that period and left unpaid current ordinary expenses for that period, it is deemed conclusive proof of a diversion.

This equitable doctrine of preference upon the grounds above stated, has no relation to claims arising prior to the six months period. The claim of the New York, New Haven and Hartford Railroad Company matured in January, 1916, long before the beginning, on

April 30th, 1917, of the six months period before the receivership. Unless that claim upon its maturity became a lien taking precedence over the mortgage liens, it does not fall within the equity of the six months claims so-called and is not entitled to a preference.

The State in authorizing, under what is now General Statutes, § 3717, the Railroad Company to build the bridge and charge a certain proportion to the defendant, made no statutory provision for a lien on the corpus of the mortgaged property to secure the railroad. It gave the railroad a right of action against the defendant, but did not by legislation or otherwise, attempt to secure the railroad by a lien displacing recorded mortgages. The Public Utilities Commission in its order for the payment of the cost of the bridge did not seek to limit the defendant's use of the bridge until payment was made of its proportionate share of the cost, and thus insure the payment to the Railroad Company; but failure to do this did not constitute the claim a lien on the corpus. There is no basis for a ruling that this claim of the railroad is a lien on the corpus of the defendant's property taking precedence over the mortgage liens, unless the court in this receivership proceeding has general authority to displace liens of mortgagees in favor of meritorious creditors. In *Old Colony Trust Co.* v. *Medfield & M. Ry. Co.*, 215 Mass. 156, 162, 102 N. E. 484, the court said: "By the appointment of a receiver the court is not vested with a general authority to displace vested liens on the body of the property created by contract." As we held in *Mersick* v. *Hartford & W. H. Horse R. Co.*, *supra*, such displacement of liens can only be ordered as a method of restoring to the company for current debts sums improperly diverted from the holders of such debts for the benefit of the mortgagees during the six months prior to the receivership. The judgment in this case

gave the Railroad Company a lien upon the corpus of
the defendant's property superior to the liens of the
mortgagees because of the meritorious nature of the
claim of the Railroad Company. The court, under
the facts, had no authority to so displace the lien of
the mortgagees, or otherwise create a preference. The
Railroad Company has therefore merely a meritorious
general claim against the defendant.

The claim of the Connecticut Company arises for
services rendered for twelve months prior to the re-
ceivership on the Long Hill line so-called. The services
rendered were essential to the operation of this line.
The fact that this line was run at a loss is immaterial,
the defendant was operating it as a part of its system
and we must so treat it. The trial court allowed the
Connecticut Company's claim as to services for the six
months prior to the receivership. The mortgagees
claim that under the facts found, the trial court could
not legally so hold, because a provision in the contract
for the services allowed the Connecticut Company to
terminate the services if not paid therefor within thirty
days after rendered. This provision of the contract
does not establish the fact that these services were
rendered in reliance upon that provision. It was
evidential of that fact, but not conclusive proof of it.
The trial court upon the record might reasonably have
found the contrary. The trial court might reasonably
have found and decreed as it did, that the claims for
supplies and labor rendered by the Connecticut Com-
pany and the other supply claimants whose claims
during six months prior to the receivership, were al-
lowed as preferred, were entitled to a preference to the
extent of a proportionate share in the $4,352.83 diverted
for the benefit of the bondholders from the current
receipts of the six months preceding the receivership.
The claim of the Connecticut Company for any serv-

ices rendered prior to the six months period before the receivership, was properly disallowed as a preferred claim for the reasons stated above. Such services constitute merely a general claim against the defendant. The fact that the Connecticut Company presented its claim early in the receivership and may have threatened to cease to perform services for the receiver if not paid, is immaterial. If, because of such a threat, the receiver had paid the claim, questions would have been presented not now before us. The fact that the unpaid services of the Connecticut Company were essential to the operation of the Long Hill line for a period prior to the six months before the receivership is also immaterial. The preferred claims entitled to a proportionate share in diverted current receipts are confined to claims for supplies and services rendered within six months prior to the receivership. *North American Co.* v. *St. Louis & S. F. R. Co.*, 288 Fed. Rep. 612, 632.

The mortgagees' first reason of appeal recites that "all of the items which constitute the consideration for said balance recommended as a preferred claim in favor of the Connecticut Company were not properly allowable as parts of a preferred claim." As the mortgagees in their brief and argument attacked the whole claim as an entirety, and the Connecticut Company in defense likewise so dealt with the whole claim, we do not consider that the different items of the claim require separate consideration.

The court erred in allowing the claim of the New York, New Haven and Hartford Railroad Company as a preferred claim entitled to a lien on the corpus of the mortgaged property taking precedence over the mortgage liens. The claim should have been allowed as a general claim, without preference as a charge on the net receipts of operation by the receiver, or as a lien on the corpus of the mortgaged property.

The court did not err in its allowance, and in the preference given to the claim of the Connecticut Company to the extent allowed, or to the claims of John McCarthy, Ferris Coal Company, John C. Serre, Harry McLachlan, and Bridgeport Boiler Company.

Nor did it err in denying such preference to the claim of the Connecticut Company for a period prior to six months before the receivership.

There is error in part in the judgment, in allowing preferences against the corpus of the mortgaged property, to the New York, New Haven and Hartford Railroad Company, and the judgment is set aside, and the case remanded for the entry of a judgment in accord with the law as above stated.

In this opinion the other judges concurred.