ANSTON T. McCOOK, TREASURER OF THE STATE OF CONNECTICUT, *vs.* THE GROTON AND STONING- TON STREET RAILWAY COMPANY ET AL.

*Third Judicial District, New Haven, June Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

---

* Transferred from Second Judicial District.

218

Argued June 13th—decided July 16th, 1928.

*Charles B. Waller*, for the appellant (plaintiff).

*Charles B. Whittlesey*, for the appellant (defendant Groton and Stonington Traction Company).

*Charles Hadlai Hull*, for the appellee (defendant Westinghouse Traction Brake Company).

MALTBIE, J.   This action was brought by the treasurer of the State of Connecticut as trustee for the first mortgage bondholders of the Groton and Stonington Street Railway Company to foreclose a mortgage given to his predecessor in office to secure an issue of bonds in the amount of $375,000, bearing date July 1st, 1904, and maturing July 1st, 1924.   The company operated a railway line between Groton and Westerly, Rhode Island, and continued to do so until 1916, when all its property was sold to the Shore Line Electric Railway Company.   The latter company took title subject to the mortgage in suit and also to a second mortgage securing another issue of bonds by the Groton and Stonington Street Railway Company in the amount of $100,000.   The Shore Line Company thereafter operated the railway in connection with several lines owned by it until October 1st, 1919, when it went into receivership.   Subsequently, by order of court, the receiver sold the railway line formerly owned by the Groton and Stonington Street Railway Company to a corporation known as the Groton and Stonington Traction Company.   Interest was paid on the bonds until the receivership and thereafter by the receiver until January 1st, 1924, when default was made.   This action to foreclose the mortgage followed, the defendants being the Groton and Stonington Street Railway Company, the Groton and Stonington Traction Company and the treasurer of the State, to whom, as trustee, the

mortgage given to secure the second issue of bonds by the former company had been executed.

During the six months prior to the appointment of the receiver, the Westinghouse Traction Brake Company sold and delivered to the Shore Line Company certain supplies, such as bearings, bushings, valves, pistons and like articles necessary for the operation, equipment and useful improvement of its railway lines. These articles were not paid for and the Westinghouse Company presented a claim for them to the receiver, asking its allowance as preferred. It was allowed as a common claim, the preference being denied. After this action was instituted, the Westinghouse Company was permitted by the court to intervene as a defendant and filed a cross-complaint in which it claimed that the debt owed to it was a charge and lien upon the property being foreclosed which had precedence over the two mortgages given to secure the bond issues. After it had intervened, upon a stipulation of the parties that such action should be taken, the property in foreclosure was ordered sold by the court, free of the claimed lien of the Westinghouse Company, the Traction Company giving a bond, with surety, to pay any judgment recovered by the Westinghouse Company upon its cross-complaint. The trial court gave judgment for the Westinghouse Company to recover the amount of its claim, and from that judgment the treasurer of the State as trustee and the Groton and Stonington Traction Company have appealed.

Several questions of importance are presented upon the record, but the initial and decisive one is, did the Westinghouse Company, a supply-creditor, establish a diversion of current income in the six-months period preceding the receivership for the payment of interest upon the bonds which would entitle it to claim a lien or charge upon the proceeds of the sale of the property

in foreclosure The basis of the doctrine upon which it relies is stated by us in *Mersick* v. *Hartford & W. H. H. R. Co.*, 76 Conn. 11, 22, 55 Atl. 664, to be an agreement upon the part of the mortgagees who accept security for the payment of bonds, "that current debts contracted in the ordinary course of the business of the railroad company shall be paid from the current earnings from the railroad before such mortgagees shall have any claim upon such income. It is by virtue of this implied agreement that the current debts, as between supply-creditors and mortgagees, become a charge in equity upon the continuing income, both before and after the appointment of a receiver, and whether or not there has been a previous diversion of income for the benefit of the mortgagee." It was there held, and reiterated in *Flint* v. *Danbury & Bethel Street Ry. Co.*, 101 Conn. 13, 125 Atl. 194, that unless there had been a diversion of income for the benefit of the bondholders, a supply-creditor is not entitled to relief. The burden of proving such a diversion rests in this case upon the Westinghouse Company, which was claiming a preference by reason of it. *St. Louis, A. & T. H. R. Co.* v. *Cleveland, C., C. & I. Ry. Co.*, 125 U. S. 658, 674, 8 Sup. Ct. 101; *Central Trust Co.* v. *East Tennessee, V. & G. R. Co.*, 80 Fed. 624, 625, 626.

The trial court has found that in June, 1919, the Shore Line Company, then the owner of the Groton and Stonington Street Railway Company line, paid to the holders of the first issue of the bonds $9,375, and to the holders of the second issue $2,000, these sums being the interest due on the bonds July 1st, 1919. It has further found that these payments were made from the current funds of the railway company and that at the time they were made it had no other funds from which to make these payments. The last findings the appellants in their appeal seek to have stricken out.

Whether the finding that the payments were made from current income is supported by the evidence depends upon the construction to be given the testimony of the president of the Shore Line Company. He gave what purported to be a statement of "cash receipts and disbursements" covering each month for the six-months period prior to the receivership. He then stated that the interest due bondholders on July 1st, 1919, was included in the item of disbursements for the preceding June, saying it was paid out of the cash on hand at that time. When he was directly asked whether the payments of interest were made from funds on hand from operations, he answered that they were made from operations and from the balance on hand April 1st, 1919, $78,254.63. Later an Exhibit was offered in evidence purporting to be an "income statement" which gave the operating revenues and disbursements and auxiliary operating revenues and disbursements for each month of the six-months period. When the court was asked to find the facts as to receipts and disbursements given by the witness, it refused to do so on the ground that they were inconsistent with the figures appearing in the Exhibit, which it considered more reliable. It does not appear, however, that the two covered the same ground; the testimony of the witness was as to "cash receipts and disbursements" and would naturally give the items of actual receipts and expenditures during each month; the Exhibit was designed to show the profit or loss in operation and would naturally include income earned that month whether received then or later and the expenses of operation for that month, whenever paid. The testimony of the witness went no farther than to say that the interest was included in the cash disbursements for the month of June. By the statement that the interest was paid from the income from operation and the bal-

ance on hand on April 1st, he must have meant that it was paid from the mingled fund arising from the two sources. The finding that it was paid from current funds of the company does not have any reasonable support in the evidence.

The finding that when the payment of interest was made the company had no other funds from which to pay it except current income, also lacks reasonable support in the evidence. The trial court has found that on April 1st there was cash on hand amounting to $78,254.63; if we take the figures given in the Exhibit to which we have referred as showing current income and current expenses for the months of April, May and June, a small profit was earned by the company; if we take the figures given by the president of the company showing cash receipts and disbursements, there was an excess of the latter over the former in the amount of about $32,000; in either event the cash on hand on April 1st, 1919, had not been so depleted that the company could be said not to have funds other than current revenue from which the payment of interest could have been made. This finding too must be stricken out.

But even if we could regard it as a fact in the case that the interest due the bondholders on July 1st was paid from the current income of the company for June, it would not be sufficient to establish the equity of the Westinghouse Company. The six months' period before the receivership is to be considered as a unit, and creditors for current operating expenses for that period are to be regarded as forming one class, just as, on the other hand, the mortgage creditors form a class. *Gregg* v. *Metropolitan Trust Co.*, 124 Fed. 721, 725. Otherwise it would be necessary to separate the creditors according to the time the debts due to them were incurred and determine the equity of each on the basis

of a loss to him by reason of the diversion of operating income for some particular part of the six-months period. This might easily result in the payment to current creditors of an amount exceeding current income, to the unjust loss of the bondholders. All the creditors are entitled to claim is that a sum equal to current income shall be applied to debts incurred for current operation; if, at any particular time, current income is used to pay interest to bondholders and the company later applies to current debts a sum arising from other sources equal to the amount so used, or if it uses money coming from other sources to pay current debts and later replaces it with an equal amount derived from current income, creditors for the expenses of current operation suffer no unjust detriment. *Gregg* v. *Metropolitan Trust Co., supra; Birmingham Trust & Savings Co.* v. *Atlanta, B. & A. Ry. Co.*, 300 Fed. 173, 178. If, in any particular period, be it a month or a week, it appears that current income had been used to pay interest on bonds, and this was held an improper diversion, no matter how much money arising from other sources was later applied to current debts, it is obvious that current creditors might absorb a sum beyond that arising from current operation, and the result would be inequity as regards the rights of bondholders. The mere fact, then, if it were a fact, that the interest due the bondholders in the instant case on July 1st was paid from current income received in June would not of itself justify judgment for the Westinghouse Company.

The trial court has found, and this finding is not attacked, that on April 1st, 1919, the railway company had on hand cash to the amount of $78,254.63; that in the six months thereafter preceding the receivership it received operating revenue to the amount of $550,185.15 and other revenue to the amount of

$65,490.33; that it disbursed for operating expenses $682,324.66, and for other expenses $44,932.90, and for taxes $12,314.07; that the loss in the whole period was $123,896.16; and that it had cash on hand October 1st, 1919, amounting to $10,464.45. It thus appears that, whether we regard operating revenue and expenses alone, or total revenue and total expenses, or place total revenue against operating expenses disregarding the other expenses, the company spent in this period considerably more than it received, and reduced its cash on hand by some $68,000, a sum largely in excess of the amount expended for interest upon the bonds. Indeed, these figures could only be explained upon the basis that the company during this period received money from other sources than income from operation, for the deficit is considerably larger than the cash on hand on April 1st. There is nothing to indicate that the cash on hand on that day or the money received from sources other than income, was kept or applied as a distinct fund and we can only assume that there was an intermingling of this money with sums accruing from operation in the common treasury. If we look at the entire period of six months, the trial court's conclusion that there had been a diversion of current earnings from the payment of current debts incurred in the ordinary operation of the railway obviously is not supported by these figures; all the operating income may have been disbursed in the payment of current debts and the interest payment to bondholders may as well be attributed to the expenditures by which the cash on hand was reduced from $78,254.63 on April 1st, 1919, to $10,464.45 on October 1st, 1919, or to money from other sources. The judgment therefore cannot be sustained.

There is error, the judgment is set aside and the cause remanded with direction to enter judgment upon

the counterclaim against the Westinghouse Traction Brake Company.

In this opinion the other judges concurred.